UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES BUFKIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No. 2:17-cv-00588-KJN<br><br><br><br>ORDER |

　　　　Plaintiff Charles Bufkin seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence in the record.  (See ECF No. 17.)  The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment.  (ECF No. 18.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 21.)

　　　　After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

1

summary judgment, and AFFIRMS the Commissioner's final decision.

I.   BACKGROUND

Plaintiff was born on October 11, 1956, has graduated high school, attended some college, and spent six months in the Air Force before receiving an honorable discharge.[2]  (Administrative Transcript ("AT") 169-70, 302.)  On July 31, 2013, plaintiff applied for SSI, alleging that his disability began on March 1, 2013.  (AT 144, 302.)  Plaintiff claimed that he was disabled due to a sore left knee, sore lower back, and heart attack/heart problems.  (AT 323.)  After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on March 5, 2015.  (AT 157-202.)  The ALJ subsequently issued a decision dated June 25, 2015, determining that plaintiff had not been under a disability as defined in the Act, since July 31, 2013.  (AT 144-51.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 17, 2017.  (AT 1-4.)  Plaintiff subsequently filed this action on March 18, 2017, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.   ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly discounted plaintiff's credibility and (2) whether the ALJ's residual functional capacity ("RFC") determination was without substantial evidentiary support.[3]

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's opening brief raises the issues in reverse order.

mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the . . . opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV. DISCUSSION

    A.    Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[4] At step one, the ALJ concluded that plaintiff has not engaged in

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> 
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> 
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

3

substantial gainful activity since July 31, 2013, the date of his application. (AT 146.) At step two, the ALJ found that plaintiff has the following severe impairments: left knee osteoarthritis, degenerative disc disease of the lumbar spine, and cardiac disorder. (Id.) However, at step three the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ concluded, based on her review of the entire record, that plaintiff has the RFC to perform the full range of medium work as defined in 20 C.F.R. 416.967(c). (AT 147.) At step four, the ALJ determined that plaintiff is "capable of performing past relevant work as a Warehouse Worker" because such "work does not require the performance of work-related activates precluded by the claimant's residual functional capacity." (AT 150.) Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, since July 31, 2013, the date the application was filed. (AT 151.)

B.  Plaintiff's Substantive Challenges to the Commissioner's Determinations

1.  *Whether the ALJ improperly discounted plaintiff's credibility*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could

---

Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

> reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of cardiac disorder, back pain, and left knee pain. Indeed, the ALJ limited plaintiff to medium work. (AT 147.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding his symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

### i.  Objective medical evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir.

2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)).  Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider.  Burch, 400 F.3d at 681.

Here, the ALJ cited to multiple entries in the record that did not support the intensity, persistence, and limiting effects of plaintiff's allegations of disabling symptoms.  (See AT 147-49.)  Importantly, the ALJ relied upon the September 30, 2013 examination of consultative physician Sanford Selcon, M.D. that revealed mostly normal findings—such as normal gait without the use of an assistive device, negative straight leg raising test, no back tenderness to palpation, and largely normal range of motion throughout.  (See AT 148, 150, 509-13.)

As to plaintiff's cardiac disorder, the ALJ pointed out that plaintiff "made numerous visits to the emergency department complaining of heart palpations and/or increased heart rate" including visits prior to the alleged onset date, and that "diagnostic testing indicated supraventricular tachycardia (SVT)."  (AT 147; see AT 375-79, 425-80.)  At the same time, the ALJ observed that the records revealed that the SVT was found to be "secondary from cocaine abuse" and that plaintiff was "treated via electrical cardioversion and maintained normal sinus rhythm."  (Id.; see AT 375-79, 425-80.)  Moreover, "he was discharged on the same day with a prescription for Metroprolol."  (Id.; see AT 375-79, 425-80.)  The ALJ also noted that "[a]t subsequent emergency room visits, the claimant's SVT resolved through medication rather than electrical cardioversion."  (AT 148; see AT 677-79, 711.)  Additionally, the ALJ pointed out that when plaintiff took his prescribed medications, the "rapid palpitations have been successfully suppressed."  (Id.; see AT 518, 677-79, 711.)

As to plaintiff's lumbar spine, the ALJ relied on diagnostic imaging and physical examinations in the record.  The ALJ observed that a September 2014 x-ray "showed degenerative disc disease and facet joint degenerative changes" with "[o]therwise negative lumbosacral spine" and a December 2014 x-ray showed no changes.  (AT 148; see 536, 539.)  Then in "February 2015, inspection of the lower extremities revealed no cyanosis, edema, calf swelling, or tenderness.  He had full strength in his upper and lower extremities."  (Id.; see AT 774-76.)  The ALJ also discussed the "lower extremity duplex ultrasound study [that]

demonstrated absent flow in the right anterior tibial artery consistent with a possible occlusion" and observed that "the claimant's examining doctor averred that a high-grade disease involving only the right anterior tibial artery is not sufficient to cause the limping" which suggests that "claimant's pain is of neurological origin consistent with sciatica." (AT 148-49; see 547-51.) Thus, the ALJ concluded that "based on the claimant's tenderness to palpation and evidence of sciatica, I limit the claimant to the full range of medium exertion." (AT 149.)

As to plaintiff's left knee, the ALJ acknowledged plaintiff's use of a brace and cane, but also pointed out treatment notes that revealed that despite a limited range of motion "all ligaments were intact; [plaintiff] had full muscle strength and intact sensation"; and "[a]n [x]-ray showed no fracture, no dislocation, [and] mild degenerative joint disease." (AT 149; see AT 410-13.)

Therefore, the ALJ reasonably concluded that the objective evidence in the record did not support the severity of plaintiff's alleged impairments, which served as one reason among many to discount plaintiff's credibility. See Burch, 400 F.3d at 681.

### ii. Failure to failure to follow treatment

Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted).

The ALJ noted that "[o]n numerous occasions, the claimant reported that he was not compliant with his treatment regimen" and that "despite repeated warnings to stop drinking alcohol and smoking tobacco, the claimant has continued to do so." (AT 148.) These observations are supported by evidence in the record. (See AT 177, 196, 487-88, 569-73, 711.)

Plaintiff asserts that the ALJ failed to properly consider the reasons why plaintiff was non-compliant with his medication. (See ECF No. 17 at 20.) However, the ALJ pointed to portions of the record that demonstrate that plaintiff was advised to take his medication on multiple occasions

and that he was even counseled on where to go to obtain the medications. (See AT 148, 487-88, 569-73, 711.) Moreover, the ALJ noted that the record demonstrates that plaintiff did take his medication at various times. (See AT 148, 518.) There is no indication that plaintiff's "physical, mental, educational, [or] linguistic limitations" rendered him unable to seek treatment or comply with the prescribed medication regimen. See 20 C.F.R. § 404.1530(c). Furthermore, even assuming plaintiff's failure to take his medication was excusable, he still continued to use alcohol and tobacco against medical advice.

Therefore, the ALJ appropriately relied on plaintiff's failure to follow his doctors' orders as a reason to discount plaintiff's credibility.

### iii. Conservative treatment

Plaintiff's relatively conservative treatment was also a proper consideration. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

The ALJ appropriately observed that "[a]lthough the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature." (AT 149.) Throughout her decision, the ALJ detailed this routine treatment (see AT 147-50), which included prescribing medication, physical therapy, and range of motion exercises; dispensing a knee brace and cane; and counseling plaintiff to cease smoking. (See AT 410-13, 487-88, 490-94, 544-45, 569-73, 677-79, 711, 774-76.)

### iv. Condition can be controlled with medication

A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983). As explained, the ALJ appropriately noted that plaintiff's cardiovascular issues were controlled when plaintiff took his

prescribed medications. (See AT 148, 518, 677-79, 711.)

### v. Daily activities

Substantial evidence supports the ALJ's finding that plaintiff's daily activities are inconsistent with his allegations of disabling symptoms and limitations. (See AT 148-49, 168-89, 183-84, 187.)

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, the ALJ noted that

> The claimant takes public transportation to attend doctors' appointments, buy groceries, and even attend the hearing. This suggests more than adequate ability to stand, walk, and ambulate effectively. The claimant also indicated that he lifted his grandchild who weighs about 50 to 70 pounds. He even admitted that he can lift about 50 pounds. He can also do some patch-up work around the house. . . . These activities support my conclusion that the claimant is capable of the full range of medium work.

(AT 149.) These conclusions are based upon plaintiff's hearing testimony. (See AT 168-69, 183-84, 187.)

To be sure, the record also contains some contrary evidence—such as plaintiff exhibiting an awkward gait in at least one examination and plaintiff using a knee brace and cane every day—suggesting that plaintiff's activities are more limited. (AT 198, 563-68.) However, it is the

9

function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

### vi. Improper reason with other proper reasons for discounting credibility

The ALJ also concluded that "[g]iven the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by a treating source. Yet the record does not contain any opinions from the treating source indicating that the claimant is disabled." (AT 149.) Plaintiff asserts that this is an improper reason to discount plaintiff's credibility because plaintiff attempted to submit treating source opinions to the Appeals Council, but that these opinions were rejected. (See AT 17 at 20-21.)

Even assuming, without deciding, that this was not a legitimate reason to discount plaintiff's testimony, the error is harmless because the ALJ provided several other valid reasons for only partially crediting plaintiff's testimony. See Molina, 674 F.3d at 1115 (harmless error when ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record).

////

////

2. *Whether the ALJ's RFC determination was without substantial evidentiary support*

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. See Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

Plaintiff alleges that the ALJ's RFC determination is not based upon substantial evidence because "[m]ost of the medical evidence of record was never reviewed by a state agency physician nor by the consultative examiner or any other medical expert" and that the ALJ erred by reviewing these record on her own, without the assistance of a medical expert. (AT 17 at 13-14.) Plaintiff cites to Day v. Weinberger, 522 F.2d 1154 (9th Cir. 1975), in support of this argument.

However, Day is inapposite to the current situation. In Day, the Hearing Examiner rejected the opinions of medical experts, instead substituting his own determination that Day was not disabled in part because at the hearing Day "did not exhibit the physical manifestations of prolonged pain that are listed in a leading medical textbook." 522 F.2d at 1156. The Ninth Circuit held that "the Hearing Examiner, who was not qualified as a medical expert, should not have gone outside the record to medical textbooks for the purpose of making his own exploration and assessment as to claimant's physical condition." Id.

Here, the ALJ did not go outside the record to craft plaintiff's RFC. Rather, the ALJ gave great weight to the expert opinions in the record and based her RFC determination on the record as a whole. (See AT 147-50.) While much of the evidence was not reviewed by the experts, the

ALJ appropriately reviewed the record and made a reasonable and supported decision, as is her duty. See 20 C.F.R. § 404.1545; Vertigan, 260 F.3d at 1049.

Indeed, the medical record is voluminous in this matter and the ALJ had sufficient information on which to base her RFC determination. See Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). While the medical evidence was subject to rational interpretation by the ALJ, it was not so ambiguous as to trigger a duty to develop the record further. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The court finds no error on this basis.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: September 26, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE